**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

MICHAEL J. SCHNEIDERS,

        Plaintiff,

vs.

JOANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

No. C05-4092-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATION AND
PLAINTIFF'S OBJECTIONS TO
REPORT AND RECOMMENDATION**

————————————

**TABLE OF CONTENTS**

*I.* **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Synopsis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Standards Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.* **BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *A. The Record* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   *B. The ALJ's Decision* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   *C. Judge Zoss's Report And Recommendation* . . . . . . . . . . . . . . . . . . . . 7
   *D. Schneiders's Objections* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   *E. The Commissioner's Response* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*III.* **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   *A. Is The ALJ's Decision Supported By Substantial Evidence?* . . . . . . . . 12
      *1. Residual functional capacity to perform "other work"* . . . . . 13
      *2. "Other work" exists in significant numbers in the national
         economy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
   *B. Should The Court Remand Or Order Benefits?* . . . . . . . . . . . . . . . . . 19
      *1. The need for an adequately developed record* . . . . . . . . . . . 20
      *2. The need for a proper vocational expert's opinion* . . . . . . . . 21

*IV.* **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# I. INTRODUCTION

## A. Synopsis

Plaintiff Michael J. Schneiders seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Title II disability insurance ("DI") and Title XVII supplemental security income ("SSI") benefits. Schneiders sought benefits on the basis of Chronic Obstructive Pulmonary Disease (COPD). The ALJ denied Schneiders's application for benefits and that denial of benefits was affirmed at each subsequent stage of the administrative proceedings so that it became the decision of the Commissioner of Social Security. On judicial review, Magistrate Judge Zoss recommended that the Commissioner's denial of benefits be affirmed. *Schneiders v. Barnhart*, No. C05-4092-MWB, 2006 WL 559247, *1 (N.D. Iowa March 7, 2006). Schneiders filed objections to the Report and Recommendation and the Commissioner filed a response to Schneiders's objections. The court finds this matter is now fully submitted and ready for consideration.

## B. Standards Of Review

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996) (citing 28 U.S.C. § 636(b)(1)); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)). Schneiders has made specific, timely objections in this case. Therefore, *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is required here. *See* 28 U.S.C. § 636(b)(1).

In this case, the court's *de novo* review requires application of the standard of judicial review for cases involving the denial of social security benefits based on 42 U.S.C. § 405(g), section 405(g) which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." This court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). This standard of review was explained by the Eighth Circuit Court of Appeals as follows:

> Our standard of review is narrow. "We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support a decision." *Id*. If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision.

*See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

The Eighth Circuit Court of Appeals also has explained, "In reviewing administrative decisions, it is the duty of the Court to evaluate all of the evidence in the record, taking into account whatever in the record fairly detracts from the ALJ's decision." *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001) (quoting *Easter v. Bowen*, 867 F.2d 1128, 1131 (8th Cir. 1989)); *accord Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (the court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial"); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001) ("In assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it."). In reviewing the record for substantial evidence, the court may not make its own findings of fact by re-weighing the evidence and substituting its own judgment for that of the Commissioner. *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). Weighing the evidence is a function of the ALJ, who is the "statutory" fact-finder. *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). Instead, the court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Krogmeier*, 294 F.3d at 1022; *accord Jones v. Barnhart*, 335 F.3d 697, 698 (8th. Cir. 2003). In addition, the court must also review the Commissioner's decision and decide whether the Commissioner considered and applied the proper legal standard. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n. 2 (8th Cir. 1995).

## II. BACKGROUND

### A. The Record

Schneiders worked for Gateway from August 1995 to January 1998. (R. at 89, 261-263, 265.) Schneiders would have coughing spells and bronchitis which caused him to miss work. (*Id*.) Schneiders then worked for Systems Management on and off from 1999 through 2001 performing cleaning duties, but the grease in the environment aggravated his breathing disorder; therefore, he was unable to stay employed there. (R. at 89, 92, 265-266.) Schneiders worked occasionally from 2000 to 2003 as a sheet metal worker until his breathing problems also interfered with that job. (R. at 266.) Schneiders also worked occasionally as a sheet rock installer from October 2001 to March or April 2002, but was fired because he suffered a coughing attack and could not make it to work. (R. at 89, 91, 278.)

Schneiders has not had any insurance since the Gateway job. (R. at 219-239.) Schneiders continued to experience problems even though he was not able to see a doctor due to lack of insurance. He testified that his COPD symptoms remained basically the same to date, including bronchitis, asthma, breathing problems, coughing spasms, and head congestion. Specifically, he stated that over the years he has received temporary benefit from Prednisone tablets and other medications, but medications have not really helped alleviate his symptoms. (R. 268-69, 276). Schneiders stated that he suffers coughing spells at all times of the day and night. The coughing spells worsen when he lies down, and he has to elevate his upper body in a recliner in order to sleep. Schneiders stated the coughing spells interfere with his sleep. (R. 269.) Schneiders testified that he is always short of breath, and that breathing problems are brought on by any kind of physical exertion or sometimes just the conditions of the atmosphere. (*Id*.) Schneiders stated that he cannot walk a full block and has largely eliminated activities that cause him

shortness of breath. He does grocery shop on occasion, but cannot walk the length of the store, and he always carries an inhaler with him. (R. 269-72.)

Schneiders is a smoker. Schneiders said his doctors have advised him to quit smoking for many years, and he has tried to quit, but has not been successful. (R. 276-77, 282.) Other than failing to quit smoking, Schneiders denies declining any treatment doctors have offered him. (R. 283.)

Schneiders testified he is unable to work due to shortness of breath. Schneiders also testified that he has had five severe pulmonary incidents since 2002, three of which required emergency room treatment. (R. 281-82.) When he has a less severe pulmonary incident, he must stop and sit down. It typically takes him fifteen to thirty minutes to recover, depending on the severity of the attack, and he will be fatigued for awhile. (R. 284.)

### B. The ALJ's Decision

The ALJ found that Schneiders had not engaged in any substantial gainful activity since his onset date of January 8, 2002. (R. at 16.) The ALJ found that Schneiders has asthma with chronic pulmonary obstructive disease (COPD), which the ALJ characterized as a "severe impairment," but not severe enough to meet the level of impairment as required by the regulations. (R. at 17.) The ALJ found Schneiders's gastric reflux disease and mood disorders including anxiety, anger, and depression to be non-severe impairments, noting Schneiders did not claim any functional limitations due to those conditions. (*Id.*) The ALJ also found Schneiders to be non-compliant and not fully credible because he did not quit smoking in spite of medical advice to do so and yet claimed to be unable to purchase inhalers and other pulmonary medications and declined treatment for his mood disorders. (R at 20-21.) Finally, the ALJ found that even though

Schneiders could not return to his past relevant work, there were other unskilled sedentary jobs he could perform, such as final assembler and addresser. (R. at 22.) Therefore, the ALJ determined that Schneiders's application for Social Security benefits would be denied.

## C. Judge Zoss's Report And Recommendation

Judge Zoss's Report and Recommendation first addressed Schneiders's physical disabilities as follows;

> Schneiders argues the ALJ's hypothetical question to the VE was incorrect and contrary to limitations placed upon Schneiders by his doctors. In his hypothetical question to the VE, the ALJ stated the hypothetical individual would be able to tolerate "frequent only [sic] exposure to extremes of heat, cold and to humidity and to dust and fumes." (R. 292.) . . . He noted the state agency consultant found he should avoid "concentrated exposure" to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation. (*Id.,* citing R. 185).  The Commissioner argues none of Schneiders's doctors placed similar restrictions on him; rather, they repeatedly advised Schneiders to quit smoking. In addition, the ALJ argues the Physical Residual Functional Capacity Assessment form defines "frequently" as" less than two-thirds of the time." She argues "concentrated" exposure, which the consultant found Schneiders should avoid, "would equate to constant exposure or at least to exposure two-thirds or more of the time." (R. 12, pp. 14-15) The Commissioner argues further that even if the hypothetical should have limited exposure to these environmental conditions more extensively, the error is harmless because none of the jobs the VE stated the hypothetical individual could perform involves exposure to these environmental conditions. (*Id.,* p. 15)  Courts apply harmless error analysis to judicial review of administrative decisions. In the context of judicial review of the denial of Social Security benefits, an error is harmless when the

outcome of the case would be unchanged even if the error had not occurred. In the present case, the court finds the ALJ's assessment of Schneiders' ability to tolerate heat, cold, and environmental pollutants was incorrect. The record overwhelmingly supports the conclusion that Schneiders would be unable to work in an environment where he would be exposed to extremes of cold, humidity, dust, or fumes, for even short periods of time. However, the court further finds the error was harmless because, as the Commissioner notes in her brief, none of the jobs the VE stated the hypothetical individual could perform would involve exposure to those environmental conditions.

*Schneiders*, No. C 05-4092-MWB, 2006 WL 559247 at *12 (citations omitted).

As to Schneiders's credibility, Judge Zoss opined as follows:

Schneiders argues the ALJ erred in failing to make "specific credibility findings" regarding his testimony, and did not provide adequate reasons for finding his testimony not to be credible. (Doc. No. 11, pp. 5-6) The court disagrees. The ALJ evaluated Schneiders's testimony pursuant to the standards in *Polaski*. The ALJ noted Schneiders's condition responded well to prescribed treatment, but Schneiders did not follow his doctors' recommendations. Schneiders consistently complained of a lack of funds to pay for his medications. However, the record indicates Schneiders could have obtained his necessary medications for an $11.00 co-payment, but he chose to use his money to purchase a pack or more of cigarettes per day instead. The court finds Schneiders's continued expenditure of funds to purchase cigarettes is inconsistent with his claim that he could not afford an $11.00 co-payment to obtain medications that would alleviate his symptoms. Schneiders went for a long period of time without seeking treatment at all, refused some recommended treatment, and failed to take his medications as prescribed. The court finds the reasons cited by the ALJ support his determination that Schneiders's subjective complaints were not fully credible.

8

*Id.* at *13.  Therefore, Judge Zoss found that "the record contains substantial evidence to support the ALJ's determination that Schneiders retains the residual functional capacity to perform a significant number of unskilled, sedentary jobs, and he therefore is not disabled." (*Id.* at 14.)

### D. *Schneiders's Objections*

Schneiders objects to the Report and Recommendation. (Doc. No. 15.)  Schneiders argues that the record lacks substantial evidence to support the determination that he had the exertional capacity to perform sedentary work because of the ALJ's failure to consider environmental restrictions and the full effect of moderate COPD. (*Id.*)  Further, Schneiders argues that there is not substantial evidence to support the determination that he had the ability to perform a significant range of sedentary work due to the incomplete hypothetical question supplied to the vocational expert.  Schneiders argues that the ALJ's failure to include the environmental restrictions in the hypothetical question posed to the vocational expert is not merely "harmless error" as opined by Judge Zoss.

Specifically, Schneiders asserts,

> The Report and Recommendation of the Magistrate addresses the Plaintiff's allegation that the hypothetical given was defective for failing to include in the question that the plaintiff should avoid "concentrated exposure" to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases and poor ventilation. (Tr. 185 cited by Zoss Report page 21) The conclusion of Judge Zoss is that the defect in the hypothetical question is "harmless error" because of the jobs the vocational expert stated the hypothetical individual could perform involves no exposure to these environmental conditions. (Opinion p. 22) [Judge] Zoss had found the ALJ's assessment of plaintiff's ability to tolerate heat, cold and environmental

pollutants was incorrect. (Report p. 22) The examples cited by the vocational expert to the ALJ's improper hypothetical were "final assembler-production work, surveillance system monitor, and addressor." What impact the environmental restrictions would have on the final assembler – production work is not clear on the record. What factors such a person would be exposed to in each job is not clear. Moreover, these jobs were listed solely as examples. What [effect] these restrictions would have on a sample job not listed is unclear. Failure to include this limitation by the ALJ calls into question the vocational expert testing [sic] that the plaintiff could perform other work.

(Doc. No. 16.) Schneiders further objects:

> The second hypothetical asked if the vocational expert were to take into consideration a hypothetical individual that would have one unscheduled thirty minute break per week to deal with a coughing spell. The vocational expert stated "it would come close to precluding" competitive employment depending on how an employer might react to the unscheduled breaks. (Tr. 293-294). The evidence is undisputed that [Schneiders] suffers from COPD. The second hypothetical more accurately reflects his impairments than does the defective hypothetical question relied upon by the ALJ. See *Burnside v. Apfel*, 223 F.3d 840, (8th Cir. 2000), where the ALJ failed to consider environmental restrictions and the full effect of moderate COPD. The Eighth Circuit in *Burnside* reversed and remanded the case since the ALJ did not consider the non-exertional limitations. See also, *Forsythe v. Sullivan*, 926 F.2d 774, 776 (8thCir. 1991).

(*Id.*) Finally, Schneiders addresses the issue of his smoking,

> Failure to Follow Prescribed Treatment and Quit Smoking. Claimant's testimony regarding his limitations is consistent with the limitations of the doctors and the problems that he is experiencing are consistent with an individual with

COPD. In *Seals v. Barnhart*, 308 F. Supp. 2d 1241 (N.D. Ala 2004), the Court concluded substantial evidence did not support a denial of disability insurance benefits on the ground that the claimant failed to quit smoking. The ALJ did not make the requested finding that the claimant would be able to return to work if he did quit smoking. (citing *Patterson v. Bowen*, 799 F.2d 1455, 1460 (11th Cir. 1986). [sic] The Court in *Seals* notes that "improvement does not equal an ability to work." See also, *Kelly v. Callahan*, 133 F.3d 583 (8th Cir. 1998). The Eighth Circuit was reluctant to deny benefits because of Kelly's failure to quit smoking. *Id.* at 590. See also, *Rousey v. Heckler*, 771 F. 2d 1065 (7th Cir. 1985). Although claimant's condition is treatable there is no real consistent showing in the record that it is reversible to the extent that he could return to work. The report of the Magistrate and the ALJ's decision places too much emphasis on spending money for cigarettes. (Report p. 24) Claimant has not quit smoking but the fact is that were he to quit the damage has already been done.

(*Id.*).

### E.  The Commissioner's Response

The Commissioner responds as follows:

Plaintiff objects to the Magistrate Judge's conclusion that it was harmless error when the hypothetical question to the vocational expert did not include the limitation that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases and poor ventilation. See Pl.'s Objections at 2. . . . Plaintiff's objection seems to imply that the finding, that the omission of environmental limitations is harmless, is incorrect because the vocational expert provided only "sample" jobs. . . . Identifying only one sample job which did not involve these environmental limitations is sufficient if it exists in significant

numbers. In this case, the vocational expert identified three jobs, none of which involved environmental conditions, according to the Dictionary of Occupational Titles (DOT). According to vocational expert testimony, each of the jobs identified exists in significant numbers in the economy: surveillance system monitor (200 jobs in Iowa, 13,000 jobs in the nation), final assembler - production work(900 jobs in Iowa, 57,000 jobs in the nation), and addressor (300 jobs in Iowa, 24,000 jobs in the nation). . . . Plaintiff argues that, even if he quit smoking, the damage has already been done. Plaintiff cites to no evidence that his condition would not improve if he stopped smoking.

(Doc. No 17.)

## III.  LEGAL ANALYSIS

### A.  Is The ALJ's Decision Supported By Substantial Evidence?

As explained in more detail above, this court's role on judicial review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). Additionally, when considering whether the ALJ has properly denied Social Security benefits, the court must determine whether the decision is based on legal error, as well as whether the findings of fact are supported by substantial evidence on the record as a whole. *See Clark v. Chater*, 75 F.3d 414, 416 (8th Cir. 1996).

The Commissioner must, in the first instance, follow a five-step sequential evaluation process, as outlined in 20 C.F.R. §§ 404.1520 and 416.920, as follows:  (1)

Determine whether the claimant has engaged in substantial gainful activity (if so, the claimant is not disabled); (2) if the claimant has not engaged in such activity, determine whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities (if not, the claimant is not disabled); (3) if so, determine whether the impairment meets or equals one of the presumptively disabling impairments listed in the regulation (if so, the claimant is disabled); (4) if the impairment is severe, but does not meet or equal one of the presumptively disabling impairments, determine the claimant's "residual functional capacity" to determine whether the claimant can perform past relevant work; and (5) if the claimant's residual functional capacity is such that the claimant cannot perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience, and that such other work exists in significant numbers in the national economy (if there is no such work, the claimant is entitled to disability benefits). In this case, the court finds that the ALJ's analysis went wrong at step 5, because neither the ALJ's formulation of Schneiders's residual functional capacity to perform "other work" nor the ALJ's determination that such work exists in significant numbers in the national economy is supported by substantial evidence in the record as a whole.

### 1.    Residual functional capacity to perform "other work"

As this court previously explained,

> The Eighth Circuit has consistently held that questions posed to a vocational expert should set out precisely the claimant's physical and mental impairments. *Warburton v. Apfel,* 188 F.3d 1047, 1049 (8th Cir. 1999)("Such a hypothetical 'should precisely set out the claimant's **\*955** particular physical and mental impairments.'") (quoting *House v. Shalala,* 34 F.3d 691, 694 (8th Cir. 1994)); *Smith v. Shalala,* 31 F.3d 715, 717

(8th Cir. 1994) ("It is well established that '[q]uestions posed to a vocational expert should precisely set out the claimant's particular physical and mental impairments.'") (quoting *Ledoux v. Schweiker,* 732 F.2d 1385, 1388 (8th Cir. 1984)) (quoting in turn *Tennant v. Schweiker,* 682 F.2d 707, 711 (8th Cir. 1982)); *Totz v. Sullivan,* 961 F.2d 727, 730 (8th Cir. 1992) ("It is well settled that the hypothetical question posed to a vocational expert must fully set forth a claimant's impairments."); *Greene v. Sullivan,* 923 F.2d 99, 101 (8th Cir. 1991) ("The law is clear that 'hypothetical questions posed to vocational experts in such circumstances should precisely set out the claimant's particular physical and mental impairments.'") (quoting *Tennant,* 682 F.2d at 711); *Shelltrack v. Sullivan,* 938 F.2d 894, 898 (8th Cir. 1991) ("A hypothetical question posed to a vocational expert must fully set forth a claimant's impairments."). The logical underpinning for such a requirement is that "[u]nless the hypothetical question comprehensively describes the limitations on a claimant's ability to function, a vocational expert will be unable to accurately assess whether jobs do exist for the claimant." *Smith,* 31 F.3d at 717. *Thus, "[i]f a hypothetical question does not include all of the claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." Cox v. Apfel,* 160 F.3d 1203, 1207 (8th Cir. 1998) (citing *Greene v. Sullivan,* 923 F.2d 99, 101 (8th Cir. 1991)); *accord Warburton,* 188 F.3d at 1049;*Smith,* 31 F.3d at 717; *Shelltrack,* 938 F.2d at 898; *Penn v. Sullivan,* 896 F.2d 313, 316-17 (8th Cir. 1990); *Douglas v. Bowen,* 836 F.2d 392, 396 (8th Cir. 1987).

*Mehaffey v. Apfel,* 81 F. Supp. 2d 952, 954 (N.D. Iowa 2000)(emphasis added).

In this case, the ALJ asked the Vocational Expert (VE) the following:

[C]onsider an individual of Schneiders's age, education, and work experience, who can lift ten pounds frequently and

twenty pounds occasionally, stand for two hours in an eight-hour workday, sit for six hours in an eight-hour workday; occasionally climb stairs, crawl, kneel, crouch, and stoop; *and tolerate frequent exposure to extremes of heat, cold, humidity, dust, and fumes.* (R. 291-92). The VE stated the hypothetical individual would be precluded from performing any of Schneiders's past relevant work. She stated the standing limitation would only allow sedentary jobs. She noted the semi-skilled labor-type jobs Schneiders performed would not transfer to sedentary jobs. However, the VE stated the individual would be able to perform "some sedentary unskilled jobs," such as surveillance system monitor (200 in Iowa; 13,000 nationally); a "final assembler . . . in the category of production workers"(900 in Iowa; 57,000 nationally); and an addresser, "in the category of word processors"(300 in Iowa; 24,000 nationally). (R. 292-93) The ALJ then asked the VE to consider the same hypothetical individual, but he would have to miss three or more days of work per month due to coughing spells. The VE stated that would preclude the individual from all competitive employment. (R. 293.) Similarly, if the individual described in the first hypothetical question were "unable to sustain an eight-hour workday due to fatigue," the individual would be unable to perform any competitive employment. (*Id.*) If the hypothetical individual would have to take at least one unscheduled thirty minute break per week to deal with a coughing spell, the VE stated "it would come close to precluding" competitive employment, depending on how an employer might react to the unscheduled breaks. (R. 293-94)

*Schneiders v. Barnhart*, No. C05-4092-MWB, 2006 WL 559247, *7 (N.D. Iowa March 7, 2006) (emphasis added).

In this case, the ALJ acknowledged that Schneiders had consistently sought treatment since 1996 for asthma, bronchitis, and COPD and could not return to his past relevant work. Moving to the step five analysis, the ALJ failed to give proper weight to

the treating physicians' opinions, consistent treatment, and lengthy medical history when crafting the hypothetical questions presented to the Vocational Expert. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2003). (R. 17.) Dr. Lawrence Staples, who completed a Residual Functional Capacity Assessment regarding Schneiders, expressly advised him to avoid exposure to heat, cold, humidity, and fumes. (R. 171.) The ALJ, in direct conflict with the medical evidence, inexplicably *included,* in the hypothetical question posed to the Vocational Expert, the *affirmative ability* for Schneiders *to tolerate* dust and fumes. (R. 292.) (the ALJ included in the hypothetical question, "Frequent only [sic] exposure to extremes of heat, cold and to humidity and to dust and fumes.").

Thus, the ALJ's decision is fatally flawed because of the failure to include all of the pertinent factors in the questions posed to the Vocational Expert in order to accurately determine, as required in step five, whether Schneiders can do other work factoring in his impairments among other factors. In *Cronkhite v. Sullivan*, 935 F.2d 133 (8th Cir. 1991), the court held that an administrative law judge properly included in a hypothetical question concerning the effect of a claimant's inability to tolerate environmental irritants such factors as the claimant's age, education, superior intellectual ability, past work experiences, daily limitations in home environment, and unconventional allergic reactions. In contrast, here, the ALJ's hypothetical question to the Vocational Expert failed to include all of Schneiders's pertinent restrictions or to include them accurately, which rendered the VE's conclusion and answer to the ALJ's hypothetical unsound.

In addition, a search of the record fails to reveal any medical opinion by any of the health care practitioners that the source of Schneiders's COPD is smoking, rather than his previous job related exposure, or other environmental sources. Nor does the record contain any evidence that if Schneiders quit smoking, quitting would cure the COPD and/or asthma. Without such evidence, an assumption of improvement is without merit.

## 2. "Other work" exists in significant numbers in the national economy

At step five, the Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. 20 C .F.R. § 404.1520(4)(v); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("[I]f the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.") (citing *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find the claimant is disabled. 20 C.F.R. § 404.1520(r)(v). At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Goff*, 421 F.3d at 790 (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). The court does not believe the Commissioner met her burden of production.

Not only did the ALJ fail to specifically include the limitations of COPD, asthma, and the resultant pulmonary disorders as it relates to the tolerance of airborne environmental factors into the hypothetical posed to the ALJ, but the VE then formed answers to the hypothetical questions that did not include the pulmonary impairments. By utilizing the Dictionary of Occupational Titles as a source of information, the VE opined that Schneiders could perform certain jobs, but those jobs may or may not include airborne hazards. Schneiders's objections include a protest that those jobs *might* involve environmental factors prohibited by Schneiders's medical impairments. It should be noted that the Dictionary of Occupational Titles (DOT) is used to make determinations with respect to the physical and mental capability to perform work and the existence of work

in several regions of the country, but is just one source and does not always include all environmental factors. *See Pinto v. Massanari*, 249 F.3d 840 (9th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224 (11th Cir. 1999) (the DOT is just one of many sources of information regarding the occupations and actual job requirements in a locality). The use of the DOT, without the addition of the proper medically advised enviromental limitations results in an inaccurate evaluation. Thus, the ALJ lacked the necessary accurate evidence from a vocational expert to meet the Commissioner's burden to prove that Schneiders can perform substantial gainful employment other than his past relevant work, and that such "other work" is available in significant numbers in the national economy, as required by step five of the evaluation process. 20 C.F.R.§§ 404.1520 and 416.920; *see also Garrett*, 471 F.2d at 603-04; *accord Johnson*, 486 F.2d at 1025; *Haines*, 986 F. Supp. at 1215.

A detailed search of the record does not find substantial evidence to support the ALJ's finding that there are other jobs that Schneiders is able to perform because of the flawed and incomplete hypothetical question that failed to factor in the environmental limitations, which are limitations supported by undisputed medical evidence, and the evidence did not show that the jobs identified lacked such environmental limitations. *Hutsell*, 259 F.3d at 714 ("In reviewing administrative decisions, it is the duty of the Court to evaluate all of the evidence in the record, taking into account whatever in the record fairly detracts from the ALJ's decision.") (quoting *Easter*, 867 F.2d at 1131); *accord Baldwin,* 349 F.3d at 555 (the court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial"); *Howard*, 255 F.3d at 581 ("In assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it."). Under these circumstances, the court finds that the ALJ's decision is not supported by substantial

evidence on the record as a whole, because there is no substantial evidence that Schneiders can perform other jobs in the national economy. *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998)); *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). Therefore, the court cannot affirm the ALJ's denial of benefits.

## B. Should The Court Remand Or Order Benefits?

The court may affirm, modify or reverse the Commissioner's decision with or without remand to the Commissioner for rehearing. 42 U.S.C. § 405(g). Where a remand would only delay the inevitable award of benefits to which the claimant is entitled, the court may reverse and order an award of benefits. *Duncan v. Barnhart*, 368 F.3d 820, 824 (8th Cir. 2004); *Cline v. Sullivan*, 939 F.2d 560, 569 (8th Cir. 1991) (where the record itself "convincingly establishes disability and further hearings would merely delay receipt of benefits, an immediate order granting benefits without remand is appropriate") (citing *Jefferey v. Secretary of H.H.S.*, 849 F.2d 1129, 1133 (8th Cir. 1988); *Beeler v. Bowen*, 833 F.2d 124, 127-28 (8th Cir. 1987); *accord Thomas v. Apfel*, 22 F. Supp. 2d 996, 999 (S.D. Iowa 1998) (where claimant is unable to do any work in the national economy, remand to take additional evidence would only delay receipt of benefits to which claimant is entitled, warranting reversal with award of benefits). In this case, notwithstanding the lack of substantial evidence to support the ALJ's findings, the court cannot find that a remand would only delay the award of benefits to which Schneiders is entitled, *Duncan*, 368 F.3d at 824, or that the record "convincingly establishes disability." *Cline*, 939 F.2d at 569. Rather, the record was so poorly developed by the ALJ, and the ALJ failed to produce an accurate, usable VE's opinion concerning Schneiders's ability to perform alternative employment, that a remand is required.

## 1. *The need for an adequately developed record*

It is the ALJ's duty to thoroughly examine the facts and create a complete record in each case.

> It merits comment, however, that the hearing respondent received, . . ., if it is in any way indicative of standard practice, reflects poorly on the Administrative Law Judge's adherence to what Chief Judge Godbold has called his "duty of inquiry": "[T]here is a 'basic obligation' on the ALJ in these nonadversarial proceedings to develop a full and fair record, which obligation rises to a "'special duty . . . to scrupulously and conscientiously explore for all relevant facts'" where an unrepresented claimant has not waived counsel. This duty of inquiry on the ALJ would include, in a case decided under the grids, a duty to inquire into possible non-exertional impairments and into exertional limitations that prevent a full range of work." *Broz v. Schweiker*, 677 F. 2d 1351, 1364 (CA 11, 1982).

*Heckler v. Campbell*, 461 U.S. 458, 471 103 S. Ct. 1952 (1983). Here, the ALJ failed to meet that "basic obligation." As this court previously stated in *Mehaffey*:

> The court is mindful that the ALJ has a duty to develop the record fully and fairly, even if the claimant is represented by counsel. *See Cox v. Apfel,* 160 F.3d 1203, 1208 (8th Cir. 1998); *Battles v. Shalala,* 36 F.3d 43, 44 (8th Cir. 1994); *Miller v. Shalala,* 8 F.3d 611, 613 (8th Cir. 1993) *Boyd v. Sullivan,* 960 F.2d 733, 736 (8th Cir. 1992) Here, the ALJ failed to properly develop the record regarding the level of supervision that Mehaffey required while he was employed at Commercial Equipment. Because the ALJ failed to properly develop the record, there is no way to determine whether the question posed in this case accurately reflected Mehaffey's abilities and limitations. Similarly, the record is not developed as to the pace at which Mehaffey can perform competitive work in an employment setting.

*Mehaffey v. Apfel,* 81 F. Supp. 2d 952, 956 ( N.D. Iowa 2000). The court trusts that, on remand, the ALJ will not fail to fully develop the record again.

### 2.     *The need for a proper vocational expert's opinion*

This is a case in which the testimony of a vocational expert, in order to be properly utilized, should have been critically specific in setting out precisely how Schneiders's impairments could affect future employment and, therefore, the determination of disability.

> It is well settled Eighth Circuit case law that, having found Plaintiff is unable to do her past relevant work, the burden of proof shifted to the Commissioner to come forward with medical evidence to prove Plaintiff has a residual functional capacity for other work, and that other work exists in significant numbers in the national economy that such a person is able to do. *McCoy v. Schweiker*, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983); *Soth v. Shalala*, 827 F. Supp. 1415, 1417 (S.D.Iowa 1993). It is also well settled law that in order to meet the second prong of the Commissioner's burden, in cases where referral to the medical vocational guidelines (Grid) is inappropriate, the ALJ must rely on the testimony of a vocational expert in response to a hypothetical question which precisely sets out the claimant's impairments and limitations. *Ness v. Sullivan*, 904 F.2d 432, 436 (8th Cir. 1990).

*Haines v. Apfel*, 986 F. Supp. 1212, 1215 (S.D. Iowa 1997). The inclusion of non-exertional limitations, such as those suffered by Schneiders, in the hypothetical questions submitted to the VE is critical to a competent determination of disability.

## IV. CONCLUSION

Upon *de novo* determination of those portions of the Report and Recommendation to which objection has been made, the court concludes that the ALJ failed to fairly develop

the record and that the denial of benefits is not supported by substantial evidence. The Report and Recommendation recommending a different disposition of this matter is **rejected**, § 28 U.S.C. 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.")

Because the ALJ failed to develop the record, the court **reverses** the ALJ's decision and **remands** this case to the Commissioner for further development of the record consistent with this opinion. On remand to the Commissioner for a rehearing, the ALJ must develop the record further concerning whether the level of all of Schneiders's impairments will allow him to sustain employment and at a pace at which Schneiders can perform competitive work, and must submit a hypothetical question to a vocational expert which includes all of Schneiders's impairments, limitations, and restrictions. The remand in this case is pursuant to sentence four of 42 U.S.C. § 405(g)

The Commissioner shall, thereafter, issue a new decision consistent with the opinion of this court.

**IT IS SO ORDERED.**

**DATED** this 28th day of September, 2006.

Mark W. Bennett
_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA